[No. S066764. Jan. 14, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
RUSSELL ANZALONE, Defendant and Appellant.

**COUNSEL**

Kent Douglas Baker, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Mitchell Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—In this case, we interpret statutory language authorizing the continued confinement of prisoners whose severe but treatable mental disorder contributed to their commission of various specified crimes (see Pen. Code, § 2962, subds. (b), (e)),[1] including any crime in which the prisoner used "force or violence" or caused serious bodily injury (§ 2962, subd. (e)(2)(P)). As will appear, we conclude that defendant's crime of unarmed second degree robbery, unaccompanied by any actual display of force or violence on his part, and resulting in no bodily injury to anyone, did not constitute a crime of "force or violence" under this provision. Accordingly, defendant should not have been adjudged a mentally disordered offender (MDO), and his commitment was improper.

After we had set this matter for oral argument, we were advised that defendant died on August 4, 1998. Although defendant's death will abate his appeal (see, e.g., *People* v. *Dail* (1943) 22 Cal.2d 642, 659 [140 P.2d 828]), we have exercised our inherent power to retain this case for argument and opinion, to settle an interpretive issue that has troubled the lower courts (see, . e.g., *In re Jackson* (1985) 39 Cal.3d 464, 468, fn. 3 [216 Cal.Rptr. 760, 703 P.2d 100]).

## I. FACTS

The following uncontradicted facts are largely taken from the Court of Appeal decision in this case. On May 9, 1994, defendant Russell Anzalone, a "down and out" drug user, walked into a bank and handed the teller a paper plate, on which he had written: "This is a robbery, give me the money." Defendant, without displaying a weapon or exhibiting any further threatening or forcible conduct, directed the teller to "[j]ust give me $20." The teller complied, and defendant left the bank.

---

[1] All further statutory references are to the Penal Code.

Defendant was ultimately apprehended, convicted of second degree robbery (§ 211), and sentenced to prison. After he served his sentence, and before his release from prison, the Board of Prison Terms determined that he was a mentally disordered offender under section 2960 et seq. (MDO Act). He appeals from the judgment entered after a court trial confirmed his status as an MDO. (See § 2966.)

Defendant contends that, because his offense involved neither the use of a deadly or dangerous weapon during the robbery, nor any other forcible or violent conduct, the trial court was precluded by law from finding that he was an MDO. We agree. The provisions of the MDO Act demonstrate convincingly the Legislature's concern with assuring continued treatment of severely mentally disordered prisoners whose crimes involved either use of a dangerous weapon or some other actual, rather than implied, display of force or violence or infliction of serious bodily injury. Defendant's conduct does not fall within those categories.

## II. THE MDO ACT

We summarize the pertinent provisions of the MDO Act. It first sets forth legislative findings and declarations which recognize the potential danger to the public if severely mentally disordered prisoners who are not in remission are released to society. These findings led the Legislature to provide continuing mental health treatment for these persons until their mental disorder goes into remission and can be kept in that state. (§ 2960.)

The substantive provisions of the MDO Act impose as a condition of parole that prisoners meeting the following criteria must continue to be treated by the State Department of Mental Health. First, the prisoner must have "a severe mental disorder that is not in remission or cannot be kept in remission without treatment." (§ 2962, subd. (a).) Second, the disorder must have been "one of the causes of or was an aggravating factor in the commission of a crime for which the prisoner was sentenced to prison." (§ 2962, subd. (b).) Third, the prisoner must have been "in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release." (§ 2962, subd. (c).) Fourth, before the prisoner's parole or release, the treating physician and other specified medical authorities must certify that each of the noted conditions exists, and that by reason of the disorder, the prisoner "represents a substantial danger of physical harm to others." (§ 2962, subd. (d)(1).)

The final criterion for treatment as an MDO under section 2962 is set forth in subdivision (e), the provision with which we are primarily concerned in

this case. The crime for which the prisoner was sentenced to prison, and which the prisoner's severe mental disorder caused or aggravated, must satisfy two conditions, namely, (1) it was punished by a determinate sentence under section 1170, and (2) it constituted one of the following enumerated crimes: voluntary manslaughter; mayhem; kidnapping by force or fear; robbery or carjacking with personal use of a dangerous weapon; nonconsensual rape, sodomy, oral copulation, or penetration by foreign object by force, violence, duress, menace, or fear of immediate bodily injury; lewd acts on a child under age 14; continuous sexual abuse; arson; any felony involving firearm use; exploding or attempting to explode destructive device with intent to commit murder; attempted murder; or "[a] crime not enumerated [above], *in which the prisoner used force or violence,* or caused serious bodily injury . . . ." (§ 2962, subd. (e)(2)(A)-(P), italics added.)

## III. DISCUSSION

■■■ Did defendant's second degree robbery, accomplished by a simple, nonthreatening note and demand for money, involve the use of "force or violence" within the meaning of section 2962, subdivision (e)(2)(P)? The trial court opined that defendant's words, "This is a robbery," *implied* a threat of force or violence, and the Court of Appeal agreed. Defendant observes that he never "touched, scared, harmed, or threatened the teller," and he asserts that the word "force," as used in the statute, should be deemed synonymous with "unwarranted violent coercion or violent touching."

All robberies are defined as takings of another person's property "against his will, accomplished by means of force *or* fear" (§ 211, italics added), but, as defendant observes, the MDO Act undoubtedly was not intended to include *every* robbery as a qualifying "crime." As previously noted, the Legislature specifically included robberies in which ". . . it was charged and proved that the defendant personally used a deadly or dangerous weapon, as provided in subdivision (b) of Section 12022 . . . ." (§ 2962, subd. (e)(2)(D).) ■■■ Defendant convincingly asserts that, because that statute specifically includes robberies with deadly or dangerous weapon use, the principle of *expressio unius est exclusio alterius* precludes us from interpreting section 2962, subdivision (e)(2)(P), as including robberies committed without using these weapons, or without any other actual, rather than implied, use of "force or violence."

The Latin maxim defendant cites is one "of statutory interpretation meaning that the expression of one thing is the exclusion of another." (Black's Law Dict. (6th ed. 1990) p. 581, col. 1; see *In re Lance W.* (1985) 37 Cal.3d

873, 888 [210 Cal.Rptr. 631, 694 P.2d 744].) The maxim is not immutable and is inapplicable if its operation would contradict a discernible and contrary legislative intent. (See *California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 350-351 [45 Cal.Rptr.2d 279, 902 P.2d 297]; *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].)

The Court of Appeal, focusing on the MDO Act's purpose to protect the public from dangerous offenders, rejected defendant's arguments and affirmed the judgment requiring him to undergo continued treatment under the MDO Act. The court concluded that "Section 2962, subdivision (e)(2)(P) has a broad sweep and states that with respect to a 'crime' not enumerated in the preceding paragraphs, such 'crime' will, nevertheless, constitute a qualifying offense if it is one where the prisoner 'used force or violence.' Appellant used 'force or violence' in committing [a] . . . strong-arm robbery . . . ."

The court below reasoned that "Application of *expressio unius est exclusio alterius* would not serve legislative intent. It would frustrate legislative intent," by eliminating "strong-arm robbery" as a qualifying crime. The court opined that "Here, if the two subdivisions of section 2962 can be read as excluding strong-arm robbery as a qualifying MDO offense, an absurd result would follow. We simply cannot believe that the Legislature has drawn such a line allowing a 'strong-arm' robber to escape the reach of the MDO law."

As the Court of Appeal recognized, "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) " 'The literal meaning of the words of a statute may be disregarded to avoid absurd results . . . .' " (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593]; *Unzueta* v. *Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614].) In the Court of Appeal's view, it would be absurd to construe section 2962 as excluding "strong-arm robberies" of the kind defendant committed here.

The Court of Appeal's persistent use of the term "strong-arm robbery" to describe defendant's crime adds little substance to the analysis of the problem before us. Although courts sometimes use the term loosely to describe a forcible robbery (see, e.g., *In re Malone* (1996) 12 Cal.4th 935, 953 [50 Cal.Rptr.2d 281, 911 P.2d 468]), the term appears to have no fixed

or technical meaning in this state. It is fairly debatable whether defendant's use of a simple note and demand for a relatively small amount of money can be deemed a "strong-arm" tactic.

In addition, the Court of Appeal in the present case relied on *People* v. *Pretzer* (1992) 9 Cal.App.4th 1078, 1082-1083 [11 Cal.Rptr.2d 860] (*Pretzer*), a case that also construed section 2962, subdivision (e)(2)(P), the MDO Act provision before us. In *Pretzer*, the defendant, pretending to be armed with a gun, induced pet hospital employees to provide him with lethal drugs to assist in killing himself. He pleaded guilty to charges of false imprisonment, but argued the offense did not involve "force or violence" under section 2962, subdivision (e)(2)(P), because he exerted no physical power or strength to accomplish the offense.

The *Pretzer* court held the word "force" was not synonymous with "violence," and was not limited to applications of physical power, such as bludgeoning the victim. (*Pretzer, supra,* 9 Cal.App.4th at pp. 1082-1083.) Instead, the court opined, a court may find force where the defendant's conduct "implies force may be used" (*id.* at p. 1082), causing the victim's resistance to be involuntarily overcome (*id.* at p. 1083). To support its construction of the statute, *Pretzer* relied on the fact that "[t]he primary purpose of the [MDO Act] legislation is to protect the public." (*People* v. *Gibson* (1988) 204 Cal.App.3d 1425, 1433 [252 Cal.Rptr. 56].) The court stressed that the defendant wielded a plastic razor, pretended to be armed, and through deceit induced the employees to give him drugs. (*Pretzer, supra,* 9 Cal.App.4th at p. 1083.) Noting that the defendant's actions "could have invited resistance or escape with possible resulting injury to the employees, hospital patrons or Pretzer" (*ibid.*), the *Pretzer* court concluded that the requisite "force" had been used.

Relying primarily on *Pretzer*, the Court of Appeal in the present case concluded that defendant used "force" when he walked into the bank, announced the robbery, and demanded money from the teller, thereby *implying* a willingness to use force or violence. The Court of Appeal observed that defendant's action "easily could have invited resistance with resulting injury to the bank employees, patrons or [defendant]."

■ Therefore, the Court of Appeal and trial court agreed the word "force" in section 2962, subdivision (e)(2)(P), was broad enough to include the *implied* threat of force underlying defendant's disclosure that "[t]his is a robbery." We disagree. If the Legislature had intended that an implied threat of force was sufficient to sustain an MDO commitment, it readily could have so provided, as it did in several other Penal Code sections. (See, e.g.,

§§ 136.1, subd. (c)(1) [intimidation of witness "by force or by an express or implied threat of force or violence"], 190.3 [permitting introduction in capital cases of defendant's other criminal activity involving the "express or implied threat to use force or violence"], 261, subd. (b) [defining "duress" in rape statute as meaning "direct or implied threat of force, violence," etc.].)

A more apposite example is found in section 1192.7, subdivision (d), defining bank robbery as that term is used in section 1192.7, subdivision (c)(19). Section 1192.7, subdivision (d), provides: "As used in this section, 'bank robbery' means to take or attempt to take, by force or violence, *or by intimidation* from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." (Italics added.) The MDO Act does not include "robbery by intimidation" as a qualifying crime.

Essentially, by including an *implied* threat of force within the definition of "force," the Court of Appeal has extended section 2962, subdivision (e)(2)(P), to crimes involving force *or fear*. But if a crime may be accomplished by means of force *or* fear, deceit, or menace, the Legislature has generally so specified. (See, e.g., §§ 207 [kidnapping], 211 [robbery], 261, subd. (a)(2) [rape], 286, subd. (c) [sodomy], 288, subd. (b) [lewd acts with child under 14], 288a, subd. (c) [oral copulation], 289, subd. (a) [rape by foreign object]; see also § 422.6 [interference with civil rights by "force or threat of force"].)

The primary problem with the Court of Appeal's interpretation is that it seemingly would make *any robbery* a "forcible" one. All robberies are by definition actual confrontations between robber and victim. (See § 211 [robbery defined as taking of property from victim's "person or immediate presence, and against his will, accomplished by means of force or fear"].) A robbery based on "fear" rather than "force" would at least *imply* a threat of force that would invite possible resistance by the victim. Yet, as we have seen, clearly the Legislature did not intend every robbery to serve as a qualifying crime under the MDO Act.

The evident legislative intent underlying section 2962 was to require treatment of defendants as MDO's only in certain *limited* situations, namely where, because of mental disorder, the prisoner inflicted serious bodily injury or committed such forcible or violent crimes as manslaughter, mayhem, kidnapping, rape, or robbery *with dangerous weapon use*. Given the aggravated nature of the other crimes specified in section 2962, subdivision (e)(2), and the specific inclusion of robberies involving personal use of a

deadly or dangerous weapon in subdivision (e)(2)(D), we think it quite unlikely the Legislature intended to make every robbery attempt a "forcible" one. (See *People* v. *Harvey* (1979) 25 Cal.3d 754, 760-761 [159 Cal.Rptr. 696, 602 P.2d 396] [using similar analysis in analogous case].)

Another appellate decision reinforces our conclusion in this regard. In *People* v. *Collins* (1992) 10 Cal.App.4th 690 [12 Cal.Rptr.2d 768] (*Collins*), the Court of Appeal reviewed an order of commitment under the "force or violence" provision of section 2962, former subdivisions (d)(1) and (e). The trial court had instructed the jury using the battery instruction language of CALJIC No. 16.141. This instruction advised the jury that "force" and "violence" are synonymous and refer to the defendant's exertion of any unlawful physical force, even a slight touching done in a rude or insolent manner, and even if no pain or harm is inflicted. (See *People* v. *Davis* (1995) 10 Cal.4th 463, 541 [41 Cal.Rptr.2d 826, 896 P.2d 119] [crime of battery requires only slightest touching].)

The *Collins* court, after studying the MDO Act and the applicable legislative history, disapproved the use of CALJIC No. 16.141 in MDO Act cases under section 2962, concluding that "force" and "violence" are words of ordinary meaning requiring no further definition. (*Collins, supra,* 10 Cal.App.4th at p. 698; see *People* v. *Anderson* (1966) 64 Cal.2d 633, 639-640 [51 Cal.Rptr. 238, 414 P.2d 366].) *Collins* opined that the Legislature intended the MDO Act to apply only to violent offenders or persons convicted of violent offenses, for "[o]therwise a 'slight touching' done in an insolent, rude, or angry manner could lead to a potential lifetime confinement." (*Collins, supra,* 10 Cal.App.4th at p. 697.) In the present case, of course, defendant refrained from even a "slight touching" of his bank teller victim.

Although the *Collins* court recognized that "force" could theoretically be based on a crime that entailed the use of force on property, such as forced entry of a dwelling to commit burglary (cf. *People* v. *White* (1988) 202 Cal.App.3d 862, 866-867 [249 Cal.Rptr. 165] [the "force or violence" required for prison escape conviction under section 4532, subdivision (b), may include application of force against property]), the court suggested this result would be "at odds with the legislative history" to limit MDO Act commitments to violent offenders (*Collins, supra,* 10 Cal.App.4th at pp. 697-698). *Collins* suggested further legislation might be appropriate to clarify "what qualifies as an underlying offense" for MDO purposes, a suggestion which in 1995 evidently led to an amendment to section 2962, adding the list of specific offenses qualifying for MDO treatment. (§ 2962, subd. (e)(2)(A)-(O), added by Stats. 1995, ch. 761, § 1.)

Applying the *Collins* analysis, basing a finding of "force" on the threat of force implicit in *every* robbery, would likewise contravene legislative intent. We conclude that *Pretzer*'s theory of "implied threat of force" (*Pretzer, supra*, 9 Cal.App.4th at p. 1083) finds no support in the language or legislative history of the MDO Act. To the extent it is contrary to our opinion, that case is disapproved.

Defendant should not have been adjudged an MDO, and his commitment was improper. As previously explained, however, the pending appeal must be abated by reason of defendant's death.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.