[No. B126847. Second Dist., Div. Six. Aug. 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN BUTLER, Defendant and Appellant.

## COUNSEL

Kent Douglas Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Jennevee H. de Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**—Kevin Butler appeals from his commitment as a mentally disordered offender (MDO) under Penal Code section 2962.[1] He argues that his conviction for stalking under section 646.9 was not an MDO offense because it did not involve "force or violence," and that the evidence introduced at his court trial was insufficient to prove he suffered from a "severe mental disorder." We affirm.

### FACTS

In February of 1995, appellant was arrested for corporal injury on a cohabitant after "beating" his girlfriend. While in custody, he called his girlfriend and threatened to kill her and members of her family. He also told her he would burn her house down. After his release, he went to her place of employment several times and threatened her. He was arrested while following her in his car and was convicted of stalking under section 646.9, subdivision (a).

While serving his prison sentence for this offense, appellant was diagnosed as suffering from a bipolar disorder. He was placed in an inpatient unit in August of 1997 because he had suicidal thoughts stemming from his depression. The Board of Prison Terms (BPT) certified him as an MDO on February 24, 1998. (§ 2966, subd. (a).)

Dr. Douglas Burton, a clinical psychologist who treated appellant during the first part of 1998, opined that he suffered from a severe mental disorder within the meaning of the MDO law. (§ 2962, subd. (a).) He formed this opinion after performing cognitive testing, reviewing appellant's psychosocial history, and conducting a clinical assessment. He noted that appellant had reported hearing voices from the time that he was nine or ten years old, and had been awarded Social Security disability benefits in 1993 due to a mental disorder which rendered him incapable of seeking employment. Appellant also had engaged in aggressive behavior in prison that was consistent with a bipolar disorder.

Dr. Burton acknowledged that it had not been "particularly easy" to diagnose appellant. Appellant did not want to be placed in the MDO program and claimed that he had "faked" his symptoms in 1993 to receive Social Security benefits. He denied having mental problems while incarcerated, and told Dr. Burton that he had feigned his condition so that he would be transferred to a better prison. Dr. Burton had to evaluate whether appellant was a malingerer who had successfully manipulated the system, or

---

[1]All further statutory references are to the Penal Code.

someone with a true mental illness. Appellant's reported mental health history, his response to medication, his behavior in prison and his mental status examination convinced Dr. Burton that appellant's mental illness was genuine.

## DISCUSSION

### I.

The MDO law applies only to defendants who are serving prison sentences for crimes contained in section 2962, subdivision (e). At the time of appellant's trial, that subdivision listed several specific crimes, and additionally provided that "[a] crime not enumerated . . . in which the prisoner used force or violence, or caused serious bodily injury" was a qualifying offense. (§ 2962, subd. (e)(2)(P).)

In *People* v. *Pretzer* (1992) 9 Cal.App.4th 1078, 1082-1083 [11 Cal.Rptr.2d 860] (*Pretzer*), we determined that "force" as used in the MDO law had a broad meaning, and included any action that overcame the victim's resistance or implied that force may be used. An implied threat of force was one that "invited resistance or escape with possible resulting injury." (*Id.* at p. 1083.) Relying on our decision in *Pretzer*, the trial court in this case concluded that appellant's stalking conviction involved "force" within the meaning of the MDO law.

Section 646.9, subdivision (a), provides, "Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is guilty of the crime of stalking . . . ." A "credible threat" is "a verbal or written threat . . . made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (§ 646.9, subd. (g).) A conviction under section 646.9, subdivision (a) necessarily meets the definition of force established by *Pretzer*, even if appellant's stalking conviction did not involve the actual application of physical force.[2]

In *People* v. *Anzalone* (1999) 19 Cal.4th 1074 [81 Cal.Rptr.2d 315, 969 P.2d 160] (*Anzalone*), our Supreme Court narrowed *Pretzer*'s broad definition of "force." The court held that section 2962, subdivision (e)(2)(P) did

---

[2]The Attorney General argues that the facts supporting appellant's stalking conviction included the corporal injury charges for which he was arrested in February of 1995. The record on this point is sparse, but it appears the stalking did not begin until appellant was

not encompass a robbery committed with an "implied threat of force" (19 Cal.4th at pp. 1080-1081) where no physical injury occurs and the defendant does not resort to "any actual display of force or violence . . . ." (*Id.* at p. 1076.) Appellant argues that his stalking conviction is not an MDO offense under *Anzalone*, because he did not harm his victim and did not use actual force against her.

Were *Anzalone* the last word on the subject, appellant's argument might have merit. However, the Legislature has responded to *Anzalone* by passing Senate Bill No. 279, which amended section 2962 to include as a qualifying offense, "A crime in which the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q), amended by Stats. 1999, ch. 16, § 1.)

The amendment to section 2962 was passed as urgency legislation, and was signed by the Governor on April 22, 1999. Section 2 of the bill provides that the amendments "shall apply to any person committed pursuant to [the MDO law] on or after July 1, 1986." Section 3 of the bill states, "This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to prevent the immediate release, and to guarantee the mental health treatment of severely mentally ill offenders who are affected by the holding of People v. Anzalone (1999) 19 Cal.4th 1074 it is necessary that this act take effect immediately." (Stats. 1999, ch. 16, §§ 2, 3.)

The amendment to section 2962 was designed to prevent the release of MDO's on the sole ground that their crimes involved the threat of force rather than actual force. Because the MDO statutes are part of a civil scheme that does not implicate the rule against ex post facto laws, the amendment may be applied retroactively. (*People* v. *Robinson* (1998) 63 Cal.App.4th 348, 350-352 [74 Cal.Rptr.2d 52]; see also *People* v. *Merfeld* (1997) 57 Cal.App.4th 1440, 1445-1446 [67 Cal.Rptr.2d 759]; *People* v. *Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 835-841 [58 Cal.Rptr.2d 32].)

Appellant's stalking conviction under section 646.9 meets the criteria of section 2962, subdivision (e)(2)(Q). He followed his victim and threatened

---

released from custody for that earlier offense. We therefore do not rely on that conduct in determining whether appellant's section 646.9 conviction qualifies as an MDO offense.

to kill her and members of her immediate family. These threats were made in "such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q), amended by Stats. 1999, ch. 16, § 1.)

The trial court's use of the standard articulated in *Pretzer* was the functional equivalent of the standard described by newly enacted section 2962, subdivision (e)(2)(Q). We reject appellant's argument that he was not convicted of a qualifying offense under the MDO law.

Appellant also argues that the MDO law should not apply to his case because section 646.9 establishes its own procedure for treating offenders who are mentally ill and who violate the statute. He relies on section 646.9, subdivision (m), which requires the sentencing court to recommend a transfer to the Department of Mental Health when it believes that a defendant who is sentenced to prison for stalking would benefit from such treatment. Section 2684 allows the Department of Corrections to transfer prisoners to the Department of Mental Health for the purpose of receiving treatment; section 2684, subdivision (b) requires the Director of Corrections to consider the trial court's recommendation of such treatment when the defendant has been convicted under section 646.9.[3]

Section 646.9, subdivision (m) establishes a procedure to facilitate mental health treatment during the defendant's prison term. It neither supersedes nor conflicts with the MDO law, which does not even come into play until a

---

[3]Under section 646.9, subdivision (m), "The court shall consider whether the defendant [convicted of stalking under section 646.9] would benefit from treatment pursuant to Section 2684. If it is determined to be appropriate, the court shall recommend that the Department of Corrections make a certification as provided in Section 2684. Upon certification, the defendant shall be evaluated and transferred to the appropriate hospital for treatment pursuant to Section 2684."

Section 2684 provides:

"(a)  If, in the opinion of the Director of Corrections, the rehabilitation of any mentally ill, mentally deficient, or insane person confined in state prison may be expedited by treatment at any one of the state hospitals under the jurisdiction of the State Department of Mental Health . . . the Director of Corrections . . . shall certify that fact to the director of the appropriate department who shall evaluate the prisoner to determine if he or she would benefit from care and treatment in a state hospital. If the director of the appropriate department so determines, the superintendent of the hospital shall receive the prisoner and keep him or her until in the opinion of the superintendent the person has been treated to the extent that he or she will not benefit from further care or treatment in the state hospital.

"(b)  Whenever the Director of Corrections receives a recommendation from the court that a defendant convicted of a violation of Section 646.9 and sentenced to confinement in the state prison would benefit from treatment in a state hospital pursuant to subdivision (a), the director shall consider the recommendation. If appropriate, the director shall certify that the rehabilitation of the defendant may be expedited by treatment in the state hospital and subdivision (a) shall apply."

defendant completes his term and becomes eligible for parole. If anything, section 646.9, subdivision (m) demonstrates a heightened legislative awareness that a stalking conviction may be the product of a mental condition requiring treatment. Absent a specific provision to the contrary, we will not presume that the Legislature intended to exempt stalking as an MDO offense.

## II.

Appellant claims the evidence was insufficient to show that he had a severe mental disorder as required by section 2962, subdivision (a). A "severe mental disorder" is defined by the statute as "an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely." (§ 2962, subd. (a).) We review the trial court's finding for substantial evidence. (*People* v. *Pace* (1994) 27 Cal.App.4th 795, 797 [33 Cal.Rptr.2d 352].)

Dr. Burton concluded that appellant suffered from a bipolar disorder. This diagnosis was supported by his symptoms of irritability and agitation, his psychological history, and his treatment with medications such as lithium, doxipene and mellaril, all of which target the symptoms of bipolar disorder. Though Dr. Burton also testified that it was difficult to diagnose appellant's condition due to the possibility that he was malingering, this was merely one factor for the court to consider when assessing the expert testimony. We will not reweigh this evidence on appeal. (*People* v. *Pace*, *supra*, 27 Cal.App.4th at p. 798.)

Appellant also complains that Dr. Burton's opinion was not substantial evidence of a severe mental disorder because he may have relied on information acquired after the BPT certification hearing on February 24, 1998. We disagree.

Section 2966 provides that when a prisoner files a petition in superior court to contest the BPT certification, the proper inquiry is whether the prisoner met the MDO criteria *at the time of the hearing before the BPT.* (§ 2966, subd. (b); *People* v. *Miller* (1994) 25 Cal.App.4th 913, 916, fn. 1 [31 Cal.Rptr.2d 423].) When the deputy district attorney asked Dr. Burton for his opinion as to whether appellant had a severe mental disorder, appellant's trial counsel objected on the grounds that the doctor may have based his opinion on observations made and reports prepared after the BPT

certification hearing. The court ruled that Dr. Burton could properly rely on such information.[4] Appellant's counsel then withdrew his objection.

Counsel's withdrawal of the objection prevents appellant from challenging the admissibility of Dr. Burton's testimony on appeal. (See *People v. Tate* (1994) 29 Cal.App.4th 1678, 1682 [35 Cal.Rptr.2d 250].) His challenge to the testimony also fails on its merits.

The superior court was required to take a "snapshot view" of appellant's mental state as of the time of the BPT hearing on February 24. (*People v. Tate, supra,* 29 Cal.App.4th at p. 1682.) A change in appellant's mental condition after the BPT hearing would therefore have been irrelevant to determining whether he qualified as an MDO. (*Ibid.*) But the doctor was not asked about, and did not testify to, any change in appellant's mental status after the BPT hearing. So long as Dr. Burton's opinion was properly focused on appellant's mental condition as of February 24, nothing in the MDO law prevented him from relying upon subsequently acquired information that tended to prove appellant's condition as of that earlier date. During his testimony, the doctor referred several times to appellant's mental status on the date of the BPT hearing, showing that he understood the proper scope of his opinion.

The judgment (order of commitment) is affirmed.

Gilbert, Acting P. J., and Yegan, J., concurred.

---

[4]The court's remarks were ambiguous. It initially responded to counsel's objection by stating, "The fact that [Dr. Burton] examined material afterwards that—from which he draws an opinion on the date of the prison terms hearing is not admissible." However, it later stated, "So what does it matter if he examined material that occurred after the Board of Prison Terms hearing or before the Board of Prison Terms hearing? He can testify to his conclusion and opinions based on either that or the material before or after. It's not inadmissible."