[No. B186639. Second Dist., Div. Six. Sept. 5, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS GREEN, Defendant and Appellant.

908

**Counsel**

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Stephanie C. Brenan and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**COFFEE, J.**—Appellant Nicholas Green appeals an order committing him to Atascadero State Hospital (ASH) as a mentally disordered offender (MDO). (Pen. Code, § 2960 et seq.)[1] He contends the trial court erred in ruling that his commitment offense of felony vandalism (§ 594, subd. (a)) involved the use of force or violence, qualifying him for treatment as an MDO. We agree and hold that the statute (§ 2962, subd. (e)(2)(P)) does not apply to the use of force against property. The trial court's order is reversed.

---

[1] All further statutory references are to the Penal Code.

## FACTS

Our facts are taken entirely from expert testimony. Although the experts relied upon certain psychiatric evaluations at the MDO hearing, their reports were not admitted into evidence.

### Prosecution Evidence

A staff psychologist at ASH, Dr. Allan Roske, testified to the circumstances of the commitment offense. Appellant was loitering outside a store and the owner called the police. Appellant was arrested and became combative. He was placed in the patrol car and kicked out a rear window. He also verbally threatened a bystander.

Appellant was charged with making criminal threats (§ 422); vandalism (§ 594, subd. (a)); and the misdemeanor offenses of intentional interference with business (§ 602.1, subd. (a)) and unlawful obstruction of a peace officer (§ 148, subd. (a)(1)). At his arraignment, the court expressed a doubt as to his competency, and criminal proceedings were suspended pursuant to section 1368.

Appellant was subsequently found mentally competent to stand trial and criminal proceedings were reinstated. He entered a plea of nolo contendre to vandalism and the remaining counts were dismissed. He was sentenced to 16 months in state prison. After appellant served his sentence, the Board of Prison Terms certified him as an MDO.

Dr. Allan Roske is a treating psychologist on appellant's unit. He diagnosed appellant as suffering from a schizoaffective disorder, polysubstance abuse and an antisocial personality disorder. In forming appellant's diagnosis, Dr. Roske relied on MDO evaluations prepared by the California Department of Corrections (CDC), the admission psychiatric evaluation at ASH, appellant's social history and the probation officer's report. He also reviewed the reports of Drs. Miculian, Selby and Record. Drs. Selby and Record did not testify and are not identified in the transcript. Respondent made reference to the report of a prosecution witness, Dr. Weber, but he did not testify.

Dr. Roske indicated that appellant met the statutory criteria and qualified as an MDO. He based his opinion on the reports listed above and his personal observations of appellant on the unit. After his admission to ASH, appellant

exhibited several symptoms of schizoaffective disorder, such as "impulsivity" and hearing voices. He has since been responsive to medication and now appears "to be in a fairly good partial remission" and "has stabilized pretty reasonably."

It was Dr. Roske's belief that the commitment offense involved the use of force or violence. He based this conclusion on the previously mentioned reports "in the legal section. In there I know I found a document with—I believe it was an arrest report, or pre-arrest report that listed the initial charges. And then the probation officer's report discusses history and charges. And the legal documents following, talking about what he was actually convicted of."

Dr. Roske testified that, according the probation officer's report, "there was a threat of violence at the time of the commission of the crime. . . . [¶] [O]n the date that it occurred, [appellant] was out in front of a business with some other individuals who, I believe, were living on the street at that time. He was—the shop owner had called the police, saying that there had been some shoplifting, and the police arrived. They—I believe it was alleged that [appellant] had done some of the shoplifting, and they attempted to detain [him]. He was resistive and difficult. They placed him in the back of the car, and he became angry and kicked out the window of the police car, shattering it. Sometime during the course of that, he threatened the life of the victim. And that's kind of the basic content of the offense, as I recall it."

On cross-examination, defense counsel established that Dr. Roske had prepared a "pretrial status report." Although the report was not admitted into evidence, Dr. Roske testified that it included a description of the offense taken "almost verbatim" from the probation officer's report. Defense counsel noted that Dr. Roske had testified that appellant had "threatened the life of the victim," but the probation officer's report read only that he "threatened the victim with physical harm upon his release."

Defense counsel established that the only information about appellant's mental status on the day of the offense was Dr. Roske's interview with him. Dr. Roske read the portion of his report, in which he had quoted appellant's version of events: " 'I was supposed to have been disturbing customers. These girls told them it was me begging for money, and it wasn't me. I was

talking to this guy who owed me some money. I was talking to him about church, and stuff like that. He was like a good person, not a regular associate. I was upset because they falsely arrested me. I ended up kicking the window, and it broke.' "

*Defense Evidence*

Dr. Miculian testified for the defense. He is a psychologist in private practice who performs evaluations for the Department of Mental Health. To prepare his evaluation of appellant, Dr. Miculian reviewed his central file at CDC, the probation officer's report, the criminal complaint and the mental health notes regarding defendant while in prison. He then conducted a clinical interview and mental status examination. Dr. Miculian concluded that appellant has a severe mental disorder but did not believe the commitment offense was a crime of force or violence because it involved the destruction of property, rather than physical harm to a person.

Citing the probation officer's report, Dr. Miculian testified that someone complained to the police that appellant and other transients were begging for money and shoplifting. Officers responded and apprehended appellant. He "became uncooperative, and he was put in a patrol vehicle, and he kicked [out] a window. Which is destroying property, which is the crime he was convicted of."

The court found that appellant's commitment offense—kicking out the window—was an act involving force and concluded that he met the statutory criteria. (§ 2962, subds. (a)–(d)(1).) It certified him as an MDO and ordered him committed to ASH for one year.

## DISCUSSION

In order to qualify an MDO for commitment, the trial court must make a finding that the prisoner meets six statutory criteria. (§ 2962, subds. (a)–(d)(1).) Among them, the court must determine whether the prisoner's severe mental disorder was one of the causes or an aggravating factor in the commission of the crime for which he was sentenced to prison. (§ 2962, subd. (b).) The statute enumerates the crimes that qualify a prisoner for MDO treatment (§ 2962, subd. (e)) and contains a "catch all" provision stating that a qualifying offense may include "[a] crime not enumerated in subparagraphs (A) to (O), inclusive, in which the prisoner *used force or violence*, or caused serious bodily injury . . . ." (§ 2962, subd. (e)(2)(P), italics added.)

Appellant was convicted under section 594, subdivision (a), which prohibits the vandalism of real or personal property. He contends that the application of force against property is not a qualifying offense pursuant to section 2962, subdivision (e)(2)(P). We agree, based upon consideration of the legislative intent and our interpretation of the terms "force or violence" in *People v. Collins* (1992) 10 Cal.App.4th 690 [12 Cal.Rptr.2d 768] and *People v. Dyer* (2002) 95 Cal.App.4th 448, 457 [115 Cal.Rptr.2d 527].

*People v. Collins, supra,* 10 Cal.App.4th 690, concerned the use of force in a relatively benign form. The commitment offense involved a prisoner's theft of a doll from a four-year-old girl. We suggested that the Legislature must have intended the term "force" to apply to violent felonies enumerated in section 667.5, subdivision (c). (10 Cal.App.4th at p. 698.) We noted the danger posed by failure to define this term: it could lead to the absurd result that "force" might be construed to include a "crime which entails use of force on property, e.g., forced entry of a dwelling to commit a residential burglary. . . ." (*Id.* at p. 697.) Such an interpretation would be at "odds with the legislative history. . . ." (*Ibid.*)

In *People v. Dyer, supra,* 95 Cal.App.4th 448, we addressed the use of force against an animal. There, a prisoner slashed a dog's throat, intending to barbecue and eat it. We held that, under section 2962, subdivision (e)(2)(P), crimes involving force or violence include the application of force against an animal, concluding that "dogs are different than inanimate objects. They are living, breathing creatures, and the slashing of a dog's throat is an act of violence against a living being." (95 Cal.App.4th at p. 456.) We reasoned that application of the MDO statute to this conduct was consistent with the legislative intent to protect the public from violent felons. (*Ibid.*)

In *Dyer* we reiterated our cautionary statement in *Collins* that an overly broad interpretation of the term "force" might lead to the illogical conclusion that force applied against an inanimate object could constitute a qualifying offense under section 2962, subdivision (e)(2)(P). To avoid a result so obviously contrary to legislative intent, we urged the Legislature to amend the statute to indicate whether the qualifying offense must involve acts of force or violence against humans. (*People v. Dyer, supra,* 95 Cal.App.4th at p. 457.)[2]

---

[2] After our decision in *People v. Collins, supra,* 10 Cal.App.4th 690, the California Supreme Court held that an unarmed robbery committed without the use of force did not fall within the catchall provision of section 2962, subdivision (e)(2)(P). (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1080–1081 [81 Cal.Rptr.2d 315, 969 P.2d 160].) As a result of *Anzalone*, the Legislature amended section 2962 to include subdivision (e)(2)(Q) which added as a qualifying offense " '[a] crime in which the perpetrator expressly or *impliedly threatened another* with the use of force or violence likely to produce substantial physical harm in such a manner that a

■ We reaffirm the position we articulated in *Collins* and *Dyer* and hold that the application of force against an inanimate object does not fall within section 2962, subdivision (e)(2)(P). Kicking out a window in a police car does not constitute a qualifying offense under the MDO statute. We need not address respondent's argument concerning terrorist threats because that charge against appellant was dismissed.

The judgment (order of commitment) is reversed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied October 4, 2006.

---

reasonable person would believe and expect that the force or violence would be used.' " (*People v. Dyer, supra,* 95 Cal.App.4th at p. 454.)