Filed 3/28/13  P. v. Lowder CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL LOWDER,<br><br>    Defendant and Appellant. | 2d Crim. No. B243669<br>(Super. Ct. No. F475081)<br>(San Luis Obispo County) |

Michael Lowder appeals from an order declaring him to be a mentally disordered offender (MDO) and committing him to the Department of Mental Health for treatment.  (Pen. Code, § 2960 et seq.)[1]  He contends the evidence is insufficient to support the trial court's finding that he presents a substantial danger of physical harm to others.  We affirm.

FACTS AND PROCEDURAL BACKGROUND

In January 2011, appellant pled guilty to the crime of stalking his ex-girlfriend in violation of a restraining order.  (§ 646.9, subd. (b).)  The trial court placed appellant on probation for a period of three years.  Four days later, appellant violated probation by filing a false police report claiming his ex-girlfriend and her boyfriend had kidnapped him and held a gun to his head.  Immediately upon his release from jail a few

---

[1] All statutory references are to the Penal Code.

months later, he again violated probation by contacting his ex-girlfriend and vandalizing her automobile. The trial court revoked his probation and sentenced him to three years in state prison.

On June 7, 2012, the Board of Prison Terms, now known as the Board of Parole Hearings, determined that appellant was an MDO subject to involuntary treatment as a condition of parole. Appellant petitioned for a hearing and waived his right to a jury trial. (§ 2966, subds. (b) & (c).)

Dr. Brandi Mathews, a psychologist at Atascadero State Hospital (ASH), testified for the People. Dr. Mathews reviewed appellant's medical records from ASH, including two prior MDO evaluations, a police report regarding his commitment offense, physician progress notes, interdisciplinary notes and prior ASH medical records from when he was committed under section 1370 in connection with his commitment offense.[2] Dr. Mathews personally interviewed appellant on the day of the hearing. Based on this information, Dr. Mathews opined that appellant met the criteria for MDO treatment.

Dr. Mathews determined appellant suffers from a severe mental disorder, as defined in section 2962, subdivision (a)(2). Appellant has a well-documented history of displaying psychotic symptoms, especially paranoia, dating back at least 10 years. During his paranoid episodes, appellant believes people are trying to kill or poison him. For example, he thought that his ex-girlfriend, her boyfriend, a judge and an attorney were conspiring to kill him.

Dr. Mathews detailed the commitment offense and appellant's paranoid ideation regarding his ex-girlfriend. On the morning of the offense, appellant called his ex-girlfriend and said he would "eat [her] eyes out," and "wanted blood this time." Later that day, appellant placed a dead raccoon with pantyhose around its mouth/neck on his ex-girlfriend's car. Dr. Mathews described this behavior as "bizarre," and noted that

---

[2] After appellant was charged with the commitment offense, the trial court found him incompetent to stand trial. Subsequently, the court ordered appellant committed to Napa State Hospital. In January 2011, the court found that appellant had been restored to competency within the meaning of section 1368. (See *People v. Lowder* (Mar. 14, 2012, A131829) 2012 WL 836890 [nonpub. opn.].)

appellant was delusional and paranoid two days after the offense. Appellant acknowledged he had ceased taking his medication weeks before the commitment offense.

Dr. Mathews concluded that appellant presented a substantial danger to others due to his severe mental disorder. She explained that the disorder, which was not in remission, was an aggravating factor when appellant threatened and stalked his ex-girlfriend before placing the dead raccoon on her car. Appellant continued to contact his ex-girlfriend over 25 times after he was committed to ASH, causing hospital police to intervene. After making additional threatening comments, he was placed on one-to-one observation for 24 hours. Appellant was psychotic when, four days after being released on probation, he filed a false police report regarding his ex-girlfriend and her boyfriend. When he was released again a few months later, appellant immediately violated probation by contacting his ex-girlfriend, vandalizing her car and shattering her window. Dr. Mathews observed that appellant lacked any insight into his mental disorder and, based on his previous behavior, it was likely he would continue to refuse medication and poorly perform when unsupervised in the community.

Appellant testified that the raccoon incident occurred after a car accidentally hit a raccoon he had been feeding. He said he wrapped a scarf around the raccoon's mouth to stop blood from getting on his clothes. Appellant claims he was on his way to a friend's house and had no idea his ex-girlfriend was there. When he arrived at the house, his friend came out and started yelling at him, so he set the raccoon down on a car that happened to belong to his ex-girlfriend. Appellant denied excessively calling her on the telephone. He admitted he suffers from attention deficit and post traumatic stress disorders.

The trial court determined beyond a reasonable doubt that appellant qualified as an MDO. The court concluded that appellant's stalking offense was a qualifying commitment offense under section 2962, subdivision (e)(2)(Q). The court remarked: "As the incident's been described, it would involve force or violence because of the threatening nature. When you take into consideration the phone calls the same day

3

with threats and then an animal being placed on a car where the victim is present and the repeated behavior of continuing to contact her after that indicates, I think, a forceful type of stalking."

The trial court determined that appellant's severe mental disorder was not in remission and that he poses a substantial risk of harm to others as a result of his disorder. The court observed: "He refuses medication. He made some vague threats during his admission and continued to try and contact the victim at least 25 times. He has not done well on supervised release and has no insight into his mental illness."

## DISCUSSION

To qualify as a commitment offense, the underlying crime must be either enumerated in section 2962, subdivision (e)(2)(A) through (O), or fall within the catchall provisions of subdivision (e)(2)(P) or (e)(2)(Q). (*People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 926.) Appellant concedes, for purposes of this appeal, that his stalking offense falls within subdivision (e)(2)(Q), which includes any crime in which the "perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (See *People v. Butler* (1999) 74 Cal.App.4th 557, 561-562 [stalking conviction involving threats to kill the victim and family satisfied subdivision (e)(2)(Q)].) Appellant contends that although his offense technically qualifies under this subdivision, the evidence of the offense and his subsequent behavior do not support the finding that he represents a substantial danger of physical harm to others by reason of his severe mental disorder. (See § 2962, subd. (d).) We disagree.

In deciding the sufficiency of the evidence, we draw all reasonable inferences from the record to support the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We do not weigh the evidence or decide the credibility of the witnesses. (*Ibid.*)

An MDO commitment is authorized for a prisoner where "'. . . by reason of his or her severe mental disorder the prisoner represents a substantial danger of physical

4

harm to others . . . .'" (*In re Qawi* (2004) 32 Cal.4th 1, 23; § 2962, subd. (d).) Whether the defendant meets that standard necessarily involves "a prediction of future dangerousness by mental health professionals." (*Qawi*, at p. 24.)

Dr. Mathews testified that appellant represented a substantial danger of physical harm to others due to his severe mental disorder. In stating that opinion, Dr. Mathews cited appellant's "bizarre" behavior in stalking his ex-girlfriend, threatening to "eat [her] eyes out" and to get "blood this time," and then placing a dead animal on her car. The doctor observed that appellant's psychosis and paranoia cause him to believe people, particularly his ex-girlfriend and her boyfriend, are conspiring to kill him. Four days after he was first released from jail, he filed a false police report claiming his ex-girlfriend and her boyfriend had held a gun to his head. The next time he was released, he shattered his ex-girlfriend's car window that very same day. While in custody, he resorted to excessive telephone calls and threatening behavior. Dr. Mathews also noted that appellant refuses to take medication to treat his symptoms and lacks insight into his mental illness. As a qualified expert, Dr. Mathews' opinion on appellant's dangerousness to others constitutes substantial evidence sufficient to support the trial court's finding. (*In re Qawi, supra*, 32 Cal.4th at p. 24; *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 490.)

In challenging the finding that he represents a substantial danger of physical harm to others, appellant refers to the lack of evidence that he has ever engaged in any actual acts of physical, as opposed to emotional or psychological, violence against his ex-girlfriend or any other person. Appellant's arguments in this regard essentially ignore the applicable standard of review. Our task is to determine whether the evidence supports the finding that appellant represents a substantial danger of physical harm to others by reason of his severe mental disorder, and not whether there is evidence from which the trial court could have made a contrary finding. Moreover, any inferences to be drawn from the evidence must be made in favor of the judgment. (*People v. Ochoa, supra,* 6 Cal.4th at p. 1206.)

The MDO law makes it clear that the determination of whether a defendant represents a "'substantial danger of physical harm' does not require proof of a recent overt act." (§ 2962, subd. (f).) Appellant's long history of threatening and harassing his ex-girlfriend, including violating restraining orders and vandalizing her car, demonstrates an inability to control his behavior without treatment. In light of this evidence, there is no basis for us to disturb the finding that appellant represents a substantial danger of physical harm to others, as contemplated under the MDO law.[3]

The judgment (order of commitment) is affirmed.

NOT TO BE PUBLISHED.


                                                    PERREN, J.

We concur:



GILBERT, P. J.



YEGAN, J.

---

[3] Appellant cites our prior opinion in *People v. Gibson* (1988) 204 Cal.App.3d 1425, to support his assertion that "section 2962 is considered a penal statute subject to applicable state and federal constitutional safeguards." *Gibson* has been abrogated by statute and overruled by case law on that point. (E.g., *People v. Robinson* (1998) 63 Cal.App.4th 348, 350–352.) In addition, appellant relies on *Gibson* for the proposition that deciding whether a prisoner represents a substantial danger of physical harm to others for purposes of the MDO law is "a separate and independent requirement" that can "not be based exclusively on either the existence of the prisoner's mental illness or the role of the illness in the underlying offense." (Emphasis omitted.) The reasoning supporting this conclusion also has been called into question. (See *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 777–779.) In any event, *Gibson* does not aid appellant because the finding that he is currently dangerous is not based solely on the existence of his mental disorder or its role in his commitment offense.

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.