Filed 6/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ELIAS ITEHUA,<br><br>    Defendant and Appellant. | 2d Crim. No. B252472<br>(Super. Ct. No. F495520)<br>(San Luis Obispo County) |

In *People v. Butler* (1999) 74 Cal.App.4th 557, the defendant was guilty of the crime of stalking because he threatened the victim with violence. (Pen. Code, § 646.9.)[1] We held the defendant's offense qualified him as a mentally disordered offender (MDO). (*Butler*, *supra*, 74 Cal.App.4th 557, 561; § 2962, subd. (e)(2)(Q).)

Here we hold that a defendant whose stalking offense involves implied threats of violence also meets the criteria of an MDO. Elias Itehua appeals a judgment committing him to the California Department of Mental Health (now known as State Department of State Hospitals) for treatment as an MDO, following his conviction of stalking. (§ 646.9.) His stalking offense involves a pattern of conduct that "impliedly threatened another with the use of force or violence" within the meaning of section 2962, subdivision (e)(2)(Q). We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

On July 30, 2013, the Board of Parole Hearings determined that Itehua met the criteria of section 2962 to be committed as an MDO. Itehua filed a petition for appointment of counsel and hearing to contest the determination. (§ 2966, subd. (b).)

Psychologist Phylissa Kwartner testified that Itehua has a severe mental disorder. She said he suffers from schizophrenia-paranoid type and has a history of psychosis and auditory hallucinations. He believes "voices are emanating from his chest."

Itehua was convicted of stalking a married woman in violation of a restraining order obtained against him. Itehua repeatedly called, texted, and followed her, and "appeared at her house on a regular basis." He had the "manic" delusion that "the victim of his offense was in a relationship with him." When he appeared at the victim's house on August 1, 2012, she "used pepper spray and called the police." Kwartner said his mental disorder was "at least an aggravating, if not, a causal factor" in the commission of his stalking offense.

Kwartner testified Itehua's disorder was not in remission and could not be kept in remission without treatment. Itehua received five months of treatment. She said he did not "voluntarily follow the treatment plan." He lacks insight about his disorder. He represents a substantial danger of physical harm to others because of his disorder. "[H]e remains at risk for returning" to the stalking behavior that was involved in his commitment offense. Itehua "would likely try to find this victim again upon release." Kwartner said he met all the criteria for an MDO commitment.

The trial court found that Itehua met the requisite MDO criteria. The court found there was evidence "of some degree of force toward the victim" based on several factors: "[Itehua] was stalking her repeatedly," there was a restraining order, and "the victim needed to pull out pepper spray to protect herself."

## DISCUSSION

*Stalking as a Commitment Offense Falling Within Section 2962*

We view the evidence in the light most favorable to the judgment drawing all reasonable inferences in support of the court's findings. (*People v. Ewing* (1999) 76

Cal.App.4th 199, 209.) We do not decide the credibility of witnesses or weigh the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206-1207.)

Before a prisoner may be committed as an MDO, the court must find that he or she committed (1) an offense listed in section 2962, subdivision (e)(2); or 2) an offense not listed, "used force or violence, or caused serious bodily injury" (§ 2962, subd. (e)(2)(P)); or (3) "[a] crime in which the perpetrator *expressly or impliedly threatened* another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used" (§ 2962, subd. (e)(2)(Q), italics added). "For purposes of this subparagraph, substantial physical harm shall not require proof that the threatened act was likely to cause great or serious bodily injury." (*Ibid.*)

Itehua notes that stalking is not one of the listed crimes in section 2962. He contends that to qualify for an MDO commitment, his offense must fall within one of the "catch all" provisions of the statute. He argues his stalking offense (§ 646.9) was not "a crime of force or violence, as required for commitment under the MDO statute." (Boldface omitted.)

Section 646.9, subdivision (a) provides: "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who *makes a credible threat with the intent to place that person in reasonable fear for his or her safety*, or the safety of his or her immediate family is guilty of the crime of stalking . . . ." (Italics added.) Consequently, proof that the defendant made "a credible threat" is a required element for a conviction of stalking. (*People v. Ewing*, *supra*, 76 Cal.App.4th at p. 210.)

In *Butler*, we held that a defendant who committed the offense of stalking came within the commitment offense requirement for an MDO commitment. (*People v. Butler*, *supra*, 74 Cal.App.4th at p. 561.) "Appellant's stalking conviction under section 646.9 meets the criteria of section 2962, subdivision (e)(2)(Q)." (*Ibid.*) "A conviction under section 646.9, subdivision (a) *necessarily meets* the definition of force . . . ." (*Id.* at p. 560, italics added.)

3

Itehua claims *Butler* is distinguishable because there the defendant made a verbal threat of violence and made no verbal threats. "[The defendant] followed his victim and threatened to kill her and members of her immediate family." (*People v. Butler*, *supra*, 74 Cal.App.4th at pp. 561-562.) Kwartner acknowledged in her testimony that Itehua did not "verbally" threaten the victim with violence.

The stalking statute defines a "credible threat" as "a verbal or written threat *. . . or a threat implied by a pattern of conduct . . .* made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety . . . and made with the apparent ability to carry out the threat . . . . " (§ 646.9, subd. (g), italics added.) The MDO statutory scheme and section 646.9 are harmonious. They contain similar language and were enacted to achieve the same underlying goal to protect the public.

An implied credible threat may be inferred from a pattern of stalking conduct. (*People v. Uecker* (2009) 172 Cal.App.4th 583, 595 ["a reasonable jury could have found that defendant made an implied threat to her safety in that he was going to do whatever he needed to get M. to go out with him"]; *People v. Falck* (1997) 52 Cal.App.4th 287, 299 ["it can be inferred that appellant intended to cause fear in the victim from the fact that he insisted on maintaining contact with her although she clearly was attempting to avoid him, and although he had been warned away by the police"].)

The trial court reasonably inferred Itehua's pattern of conduct was an implied credible threat. The victim was a married woman with children who did not want Itehua to contact her. Kwartner said she "was trying to get away from him; she had a restraining order against him." But Itehua violated that restraining order. Kwartner further testified, "Itehua continued to call her, text her, follow her, he appeared at her house on a regular basis. He continued calling her despite her changing her phone number nine times. . . . He also went to the victim's husband's workplace and harassed him." Itehua had an "erotomanic delusion" that he "was in a relationship with his victim." On August 1, 2012, Itehua went to her home again. The victim "used pepper spray and called the police."

"[S]talking is an act of domestic violence . . . ." (*People v. Ogle* (2010) 185 Cal.App.4th 1138, 1140.) In *Butler*, we held stalking is an MDO qualifying offense where

4

the defendant made express threats, but we did not exclude stalking involving a pattern of implied threats. "An implied threat of force was one that 'invited resistance or escape with possible resulting injury.'" (*People v. Butler, supra*, 74 Cal.App.4th at p. 560.) Here the trial court reasonably inferred that Itehua's pattern of conduct was an implied threat that invited resistance or escape. Harassment restraining orders are issued on a showing that there is "a course of conduct that would place a reasonable person in fear for his or her safety." (Code Civ. Proc., § 527.6, subd. (b)(2).)

Itehua violated the restraining order to achieve his "erotomanic delusion." This would instill fear in any reasonable person repeatedly targeted by a severely mentally disordered man who held such a delusion. Indeed, the trial court found the victim "needed to pull out pepper spray to protect herself."

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.