YEGAN, Acting P. J., Dissenting:
I respectfully dissent. The seasoned Superior Court judge expressly found an implied threat that appellant would sexually accost the female correctional guard in the future. Sitting as trier of fact, it could rationally draw this inference from the guard's testimony. This is not impermissible speculation as a matter of law. ( People v. Bohana (2000) 84 Cal.App.4th 360, 368-369, 100 Cal.Rptr.2d 845.) The felony offense of indecent exposure can, in theory, be committed in a way that such inference *758 cannot be drawn. But that is not what happened here. The guard was placed in fear for her safety because of appellant's actions. He was staring at her, staring at her crotch, stalking her, and while naked was masturbating in front of her. He did so willfully and lewdly. We have held that stalking is a crime involving a threat of force. ( People v. Itehua (2014) 227 Cal.App.4th 356, 173 Cal.Rptr.3d 614.) Appellant's actions went well beyond a simple exposure of the penis. And, his actions formed the basis for the forensic psychologist to opine that he was a mentally disordered offender. This case would be more robust if appellant had verbally announced his intention to sexually accost the guard. But the Superior Court found that he announced his intention by his actions.
The majority opinion recites the substantial evidence rule but in my view, it is not applied. It draws inferences away from the judgment. The guard's testimony and her expressed fear, as well as the expert opinion are given little, if any, weight on appeal. We should not view the elements of the offense in a vacuum. The entire evidentiary picture before and during appellant's encounters with the guard give the context in which the offense has been committed. To not consider the factual context gives a distorted view of what happened and why the Board of Prison Terms initiated the MDO proceeding. To the extent that People v. Kortesmaki (2007) 156 Cal.App.4th 922, 67 Cal.Rptr.3d 706 and People v. Green (2006) 142 Cal.App.4th 907, 48 Cal.Rptr.3d 464 indicate to the contrary, they should not be followed. I concurred in these opinions but upon reflection, they go too far.
To be sure, our resolution of the case depends on an intellectual inquiry and a *352 fair application of legal principles. But we should apply a practical wisdom and ask ourselves what is really going on here. We should not be a slave to the literal wording of the commitment offense and its least adjudicated elements. To do so here defeats justice. The MDO law is civil in nature and even though there are consequences, it seems obvious that the majority's technical reading of the law will lead to the release of a person who is just not ready for release into the community. If he cannot control his sexual urges in a confined setting, how can he do so in the community? It does not appear to me that the majority opinion furthers the express legislative goal of protecting the public.
I make a final observation. Whatever can be said about In re Lynch (1972) 8 Cal.3d 410, 430, 105 Cal.Rptr. 217, 503 P.2d 921, it is not binding upon us as a rule of law. I am not called upon to agree or disagree with 50-year-old *759 dicta concerning lack of aggression of an exhibitionist. It is sufficient to observe 1) appellant's actions are far more egregious than simple exhibition and 2) there is one female guard who does not agree. I therefore must respectfully dissent.