**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**February 19, 2014**

# In the Court of Appeals of Georgia

A13A2154. ALDRIDGE v. THE STATE.                    RA-081C

RAY, Judge.

Following a jury trial, Marvin Glynn Aldridge was convicted of one count each of robbery (OCGA § 16-8-40 (a) (1), (2)), aggravated assault (OCGA § 16-5-21 (a) (1)), battery (OCGA § 16-5-23.1), and criminal trespass (OCGA § 16-7-21 (a)). He appeals from his convictions and the denial of his motion for new trial, contending that his character was improperly placed into evidence at trial. Aldridge also contends that the evidence was insufficient to support his convictions for robbery and aggravated assault. For the reasons that follow, we affirm.

Viewed in the light most favorable to support the verdicts,[1] the evidence adduced at trial established that in July 2010, Roy Sewell, a 75-year-old retiree, was

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

engaged in a business relationship with The Original Mattress Factory in Cobb County. Pursuant to an agreement, The Original Mattress Factory would give Sewell all of the used mattresses that it received from its customers and, in return, Sewell would dispose of the mattresses. Sewell was allowed to place two tractor-trailers behind The Original Mattress Factory to store the used mattresses until they could be removed from the premises. When the mattresses were placed in or around the trailers, the mattresses were considered to be Sewell's personal property, and no one else had permission or authority to remove the mattresses. Sewell would eventually make money by selling the used mattresses.

On July 14, 2010, Sewell was attending to his mattresses behind The Original Mattress Factory when Aldridge drove up in a maroon-colored pickup truck and inquired about the mattresses. Sewell told Aldridge not to bother the mattresses because they were private property, and he advised Aldridge to leave the premises. In response, Aldridge threatened Sewell by saying "you don't want to mess with me," adding words to the effect that he had served time in prison. Aldridge then left the premises.

The following day, Sewell and his 12-year-old grandson went to The Original Mattress Factory to rearrange and pick up the used mattresses. When they arrived,

2

they saw Aldridge loading some of the mattresses into the back of his pickup truck. Sewell exited his vehicle and confronted Aldridge, informing him that "those are my mattresses" and telling him again to leave the mattresses alone. When Sewell attempted to remove his mattresses from Aldridge's truck, Aldridge attacked Sewell, punching him in the face, pushing him to the ground, and punching him in the chest. Sewell then retreated to his own vehicle and called the police. Aldridge started to approach Sewell's vehicle at that time, but he turned around and loaded another mattress onto his pickup truck. As Aldridge was driving away, he stopped beside Sewell's vehicle, got out of his truck, and punched the driver's side window of Sewell's vehicle. The punch caved in the window and shattered glass all over Sewell and his grandson, and Sewell sustained cuts to his head. A surveillance camera on the outside of The Original Mattress Factory recorded footage from the incident, and a copy of the video recording was played for the jury.

1. Aldridge contends that the evidence was insufficient to support his convictions for robbery and aggravated assault.[2] Specifically, he argues that (i) there was no evidence that he knew that the mattresses belonged to Sewell; and (ii) that

---

[2] Aldridge does not challenge the sufficiency of the evidence supporting his battery and criminal trespass convictions.

there was no evidence that he used force or intimidation in taking the mattresses, because they were already on his truck when Sewell arrived on the scene. We find these arguments to be unavailing.

Aldridge was indicted for robbery under OCGA § 16-8-40 (a) (1) and (2), which provide that "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y use of force" or "[b]y intimidation . . . [which places] such person in fear of immediate serious bodily injury to himself[.]" Aldridge was charged with aggravated assault under OCGA § 16-5-21 (a) (1), which provides that "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith intent to . . . to rob[.]"

In determining whether the evidence was sufficient to support Aldridge's convictions for robbery and aggravated assault,

> we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of [each] crime beyond a reasonable doubt.

4

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010).

Applying these principles, we conclude that the evidence presented at trial and summarized above — including the facts that Aldridge was advised that the mattresses belonged to Sewell and that Aldridge used force and intimidation to obtain one (if not all) of the mattresses that he took from Sewell's immediate presence — was sufficient to authorize a rational jury to find Aldridge guilty beyond a reasonable doubt of robbery and aggravated assault. See *Jackson*, supra.

2. Aldridge also contends that Sewell's testimony concerning Aldridge's statement to the effect that "you do not want to mess with me, I have served time" was irrelevant, lacked probative value, and impermissibly placed his character in issue. We discern no error.

Aldridge made a pretrial motion in limine seeking to exclude, inter alia, any testimony concerning this statement. The motion was addressed just prior to the start of the trial and, after considering the arguments of counsel, the trial court found that the statement was relevant to show "the intimidation factor" of the robbery offense, and that its probative value outweighed its prejudicial effect.

5

On appeal, Aldridge argues that his statement, which was made to Sewell on the day before the incident, was irrelevant and had no probative value regarding intimidation because there was no evidence that he used force or intimidation at the time he took the mattresses. For the reasons stated in Division 1, this argument lacks merit.

Furthermore, it is apparent from Aldridge's statement that he sought to intimidate Sewell by suggesting that he would resort to violence if Sewell later tried to prevent him from taking any of the mattresses. "Evidence that is relevant and material to an issue in a case is not rendered inadmissible merely because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.) *Evans v. State*, 288 Ga. App. 103, 108 (3) (a) (653 SE2d 520) (2007). As the statement was relevant to show Aldridge's intent, state of mind, and course of conduct for the subsequent robbery, it was admissible even though it may have incidentally placed his character in issue. See generally *Millis v. State*, 196 Ga. App. 799, 799 (1) (397 SE2d 71) (1990). Accordingly, the trial court did not abuse its discretion in admitting the statement.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*