NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2219
_____

JARRET FATE,

Appellant

v.

NATHAN HARPER, Former Pittsburgh Police Chief;
FORMER CMDR. GEORGE TROSKY;
CITY OF PITTSBURGH
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court  No. 2-12-cv-00459
District Judge: The Honorable Arthur J. Schwab

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 4, 2014

Before: RENDELL, SMITH, and HARDIMAN, *Circuit Judges*

(Filed:  March 5, 2014)

_____

OPINION
_____

SMITH, *Circuit Judge*.

## I.

Appellant Jarret Fate ("Fate") filed this civil rights action after he was assaulted by an off-duty Pittsburgh police officer, Detective Bradley Walker ("Detective Walker" or "Walker"). Fate named as defendants the City of Pittsburgh (the "City") and two of Detective Walker's supervisors, Chief Nathan Harper ("Chief Harper") and Commander George Trosky ("Commander Trosky"). Fate alleged that defendants deprived him of rights protected by the Constitution because they failed to adequately address numerous prior complaints that Detective Walker had engaged in excessively violent conduct, both during the performance of his duties and while off-duty.

The matter proceeded to trial, and at the close of Fate's case-in-chief, the District Court entered judgment as a matter of law in favor of Chief Harper and Commander Trosky. The jury subsequently returned a verdict in favor of the City. Fate now appeals the dismissal of his claims against Chief Harper and the verdict in favor of the City.[1] For the following reasons, we will affirm.

## II.

On the morning of May 1, 2010, Fate and Detective Walker were involved in a car collision just outside of Pittsburgh. At the time of the accident, Detective Walker was off-duty, wearing plainclothes, and driving his private vehicle. After

---

[1]  Fate does not appeal the dismissal of his claims against Commander Trosky.

both cars pulled to the side of the road, Detective Walker walked over to Fate's vehicle, stuck his hands through the window, and grabbed Fate and began choking him. Fate drove off, but was pursued by Detective Walker who eventually pulled his car in front of Fate's vehicle to block his escape. Walker then got out of his car, drew his police-approved firearm, and approached Fate's vehicle screaming profanities and threatening to shoot. At no point did Detective Walker identify himself as a police officer.

Detective Walker instructed Fate to exit his vehicle and to produce his license and registration, but Fate refused to move. At this point, Walker, acting in what an observer described as an "extreme fit of rage," punched and shattered Fate's windshield and driver's side window, sending glass into Fate's face. Detective Walker then began to kick and punch the side of Fate's vehicle, declaring that he was "teaching [Fate] a lesson."

Eventually, Detective Walker forced open the driver's side door and Fate began to exit the car. As Fate was exiting the car, Walker began to notice a crowd of people stopped in their cars and observing the incident. Still holding his weapon, Detective Walker turned to the onlookers and screamed, "What the f--- are you looking at?" Detective Walker then slammed his gun on the roof of the car and once again demanded Fate's license and registration. Fate complied with the

3

request and Detective Walker scribbled down the information. He then threw the documents back in the car, and left the scene.

The City's Office of Municipal Investigations later reviewed the incident and brought charges against Detective Walker for conduct unbecoming of a police officer. Those charges were sustained and Detective Walker was terminated. Additionally, the Commonwealth of Pennsylvania brought criminal charges against Detective Walker and, on April 12, 2011, he was convicted in state court of assault, reckless endangerment, criminal mischief, and harassment. He was ordered to pay restitution.

A copy of Detective Walker's disciplinary record reveals more than thirty complaints of excessive force that predate the incident with Fate. After reviewing the complaints, the Office of Municipal Investigations determined that most were either unfounded or unsubstantiated. A few episodes, however, were more credible and serious, including claims that Detective Walker choked and hit his own wife and son, that he unnecessarily slammed a woman's hand in a door five or six times, and that he had used his police authority to threaten another driver following a collision that occurred while he was off-duty. Despite the fact that several complaints were sustained, Detective Walker received only minor discipline. Indeed, he never received more than a one-day suspension.

On April 10, 2012, Fate filed suit under 42 U.S.C. § 1983 in the United

States District Court for the Western District of Pennsylvania against Chief Harper and the City of Pittsburgh, alleging that, by failing to impose harsher discipline and/or terminate Detective Walker based on the prior complaints, they were deliberately indifferent to the risk that Detective Walker would continue engaging in unnecessarily violent conduct. Further, Fate contended that the City's policy of failing to investigate or discipline officers like Detective Walker somehow caused Detective Walker's assault.

A jury trial commenced on March 18, 2013. At the close of Fate's case-in-chief, the defendants moved for judgment as a matter of law as to all claims. After hearing from the parties, the District Court granted judgment as a matter of law in favor of Chief Harper, but denied the motion as to the City. In dismissing the claims against Chief Harper, the Court pointed out that all complaints against Detective Walker were, pursuant to department policy, first investigated by the City's Office of Municipal Investigations, and that Chief Harper was "confined by the OMI process," which only permitted him to take corrective action when a complaint was sustained. App. 531, 534. Although numerous complaints were filed against Detective Walker, the Court noted that only a handful were sustained, and in those instances Chief Harper imposed discipline. The Court held that while reasonable minds might disagree about whether Chief Harper should have imposed

5

harsher discipline, "those judgment calls certainly do not rise to a level of 'deliberate indifference.'"

The claims against the City were then submitted to the jury. Fate argued that the jury should only be instructed to determine whether defendants "caused" Detective Walker's assault. The District Court, however, rejected this argument, and instructed the jury that "Plaintiff must prove . . . : First, [that] former Detective Walker acted under color of law." Because the jury concluded that Detective Walker did not act under color of law, the District Court entered judgment in favor of the City.

Fate timely appeals.[2]

### III.

Fate raises three separate issues on appeal. First, he contends the District Court erred by requiring the jury to find—as a prerequisite for his claims against the City—that Detective Walker acted under color of law. Second, he argues that the Court erred in granting judgment as a matter of law in favor of Chief Harper. And third, he contends the Court erroneously permitted defendants to argue that their disciplinary decisions were influenced by past decisions of the union-mandated arbitrators reversing officer terminations.

___

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

We find no error in the District Court's instruction requiring the jury to find that Detective Walker acted under color of law before imposing liability against the City. Section 1983 affords a remedy for constitutional deprivations brought about by state actors. Here, however, the jury determined that Detective Walker was acting as a private citizen when he assaulted Fate. Without state action, there can be no constitutional deprivation. And if Detective Walker did not violate the constitution, "it is inconceivable that [the City] could be liable to [Fate]." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994). Moreover, the Supreme Court has been clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Serv.*, 489 U.S. 189, 197 (1989).

Fate's reliance on *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3d Cir. 1989), is misplaced. In *Stoneking*, a former high school student sued her school district and its officials under § 1983 and the Fourteenth Amendment for failing to protect her from a band teacher who sexually assaulted her over a period of years. But in *Stoneking*, there was no question that the band teacher was acting under color of law when he sexually assaulted the plaintiff. Indeed, the Court noted that much of the abuse alleged in the complaint "occurred in the course of [the band teacher's] performance of his official responsibilities, such as during school-

sponsored events and trips, and sometimes on school property." *Stoneking*, 882 F.2d at 724. As a result, the Court did not directly confront the situation we face— where the state employee's wrongful conduct was unquestionably not under color of law. Because Detective Walker was not acting under color of law, we agree with the District Court that there was no basis for a municipal liability claim against the City.[3]

Because we accept the jury's determination that Detective Walker was not acting under color of law, and thus his conduct was not attributable to the state, we need not consider the other arguments raised in this appeal. Without any state action depriving Fate of his constitutional rights, there can be no supervisory liability against Chief Harper. Additionally, Fate's evidentiary challenges had no bearing on the jury's determination that Detective Walker was not acting under color of law.

For the forgoing reasons, we will affirm the judgment of the District Court.

---

[3] We note that Fate briefly attempts to use what amounts to a failure to train argument to find the City liable. While this could be an alternative theory of liability, absent a finding that Detective Walker acted under color of law, we are not persuaded by Fate's attempts. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("Failure to train can serve as a basis for § 1983 liability only 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'") (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). While we acknowledge that Detective Walker's actions were egregious, we cannot attribute Fate's injuries to any policy, practice, nor failure to train, on the part of the City of Pittsburgh. Detective Walker's actions in this incident were those of a private actor and were not prompted by any policy or practice implemented by the City of Pittsburgh or Detective Walker's superiors.