Filed 6/23/21  P. v. Matthew B. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW B.,<br><br>　Defendant and Appellant. | 2d Crim. No. B309221<br>(Super. Ct. No. 20PT-00593)<br>(San Luis Obispo County) |

　　Matthew B. appeals the judgment declaring him a mentally disordered offender (MDO) and committing him for treatment to the California Department of Mental Health as a condition of parole.  (Pen. Code, § 2962 et seq.)[1]  Appellant's sole contention is that his commitment offense – felony vandalism (§ 594, subds. (a), (b)(1)) – does not meet the MDO criteria.  We affirm.

---

[1] All statutory references are to the Penal Code.

*The Commitment Offense*

Appellant became belligerent while riding on a public trolley in San Diego.  Adolfo Davis told the police:  "I was on the trolley . . . when all of a sudden [appellant] started . . . screaming at [a] little girl saying, 'bitch what are you looking at.'  The little girl was visibly upset and she started crying.  I looked at [appellant] and he jumped at me while I was still sitting down . . . .  [H]e grabbed my neck with his hand and squeezed it.  I put him in a head lock and 'put the drop on him.'"  Davis "sustained a red scratch/bruise about four inches long on the right side of his neck just above the collar bone."

A security officer for the trolley said:  "I was standing here at the trolley [station and] when [the trolley] showed up a lot of people started rushing off of the trolley saying there was a crazy guy in there punching windows.  When I got on [the trolley] I saw [appellant] had just finished punching the [trolley] window."  Appellant damaged two windows – "the exit door window that is about three feet by one foot" and "the window that divides the seating area and the waiting platform inside the trolley."  The latter window "is about three feet by four feet."  The cost of the damage was approximately $2,500.

At the MDO hearing appellant testified:  He was "upset . . . because my grandma's house [had] burnt down."  He was "yelling at everybody on the trolley" because "they said that my mom got fucked by a donkey . . . and . . . they were making fun of my grandma's house burning down."  "[L]ittle girls" on the trolley were "watching a video of me" on their cell phone.  "[T]hey were acting like they had something in the phone of me or they were videotaping me, so I was tripping out."

Appellant continued: "I'm sitting on the trolley and I'm pissing everybody off, the whole trolley, . . . and then the next thing you know the dude [Davis] jumps up because . . . I'm also cussing at the families on the trolley as well, and then that's when I grabbed him by his clavicle, and I didn't grab him by his throat . . . because I didn't want to be violent, and then I punched him." "He [Davis] jumped at me so I jumped at him." "I was just punching the window because I just got into a confrontation with a Mexican." "[I]t's stupid for me to break windows, but I didn't potentially mean to. . . . I didn't do it in violence towards anybody. I didn't hurt anybody."

Appellant was charged with felony vandalism and misdemeanor battery. He pleaded guilty to the vandalism, and the battery was dismissed. He was sentenced to prison for two years.

*Trial Court's Ruling*

The trial court ruled that appellant had met the MDO commitment criteria under section 2962, subdivision (e)(2)(Q). The subdivision applies to "[a] crime in which the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in a manner that a reasonable person would believe and expect that the force or violence would be used. . . . [S]ubstantial physical harm does not require proof that the threatened act was likely to cause great or serious bodily injury." (*Ibid.*)

*Standard of review*

"The substantial evidence rule applies to appellate review of the sufficiency of the evidence in MDO proceedings. [Citation.] We review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence—'evidence

3

that is reasonable, credible, and of solid value'—such that a reasonable trier of fact could find beyond a reasonable doubt that the commitment offense was a qualifying offense under the MDO statute." (*People v. Labelle* (2010) 190 Cal.App.4th 149, 151 (*Labelle*).) We "'draw[] all reasonable inferences, and resolv[e] all conflicts, in favor of the judgment. . . .'" (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1244.)

*Substantial Evidence Supports Finding*
*that Commitment Offense Met MDO Citeria*

Appellant contends, "[T]his case is subject to, governed by, and on all fours with this Court's decision in [*People v.*] *Green* [(2006) 142 Cal.App.4th 907 (*Green*)]." Green was convicted of felony vandalism for kicking out the rear window of a police car. We concluded that the crime did not qualify as an MDO offense under section 2962, subdivision (e)(2)(P), which applies to "[a] crime . . . in which the prisoner used force or violence, or caused serious bodily injury." (*Ibid.*) We held that "the application of force against property is not a qualifying offense pursuant to section 2962, subdivision (e)(2)(P)." (*Green, supra*, at p. 912.)

Green had also been charged with making terrorist threats (§ 422), but the charge was dismissed when he pleaded nolo contendere to felony vandalism. We did not "address [Green's] argument concerning terrorist threats because that charge . . . was dismissed." (*Green, supra*, 142 Cal.App.4th at p. 913.) In a subsequent case we held that an MDO commitment could not be sustained upon an arson charge because it had been dismissed pursuant to a plea agreement. (*People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 927 ["Because [Kortesmaki] was not serving his prison sentence for committing arson, his MDO commitment cannot be sustained on the basis of that crime"].) Appellant's

MDO commitment therefore cannot be sustained upon the dismissed charge of misdemeanor battery against Davis. (*Id.* at p. 926-927 ["As we recognized in *People v. Green* . . . , other crimes the prisoner may have committed in perpetrating the commitment offense are irrelevant to the determination whether that offense meets the criteria for MDO treatment"].)

The present case is distinguishable from *Green*. Here, the prosecutor argued that the felony vandalism qualified as an MDO offense under section 2962, subdivision (e)(2)(Q), whereas in *Green* the People relied solely on subdivision (e)(2)(P). In his reply brief appellant contends that the People should be barred from making the subdivision (e)(2)(Q) argument on appeal because they failed to make it in the trial court: "It is fundamentally unfair to require appellant to now defend against a theory or argument that was never presented at trial or relied on by the trial court, and that has instead been invented solely for purposes of the present appeal." But the People clearly raised the subdivision (e)(2)(Q) theory in the trial court. The prosecutor stated: "It appears that the test is simply within the language of subdivision (Q). The test is whether a behavior . . . impliedly threatens another such that a reasonable person would be placed in fear." "[I]n order to . . . threaten the people on the trolley, he punched the windows after having unsuccessfully assaulted the man [Davis] who was getting the better of him. [¶] So I'd ask the Court to find that it was a crime in which he impliedly threatened force or violence on others . . . ."

In finding appellant to be an MDO, the trial court here said, "I'm adopting the reasoning offered by [the prosecutor]." Thus, the trial court found that appellant had "impliedly threatened another with the use of force or violence likely to

produce substantial physical harm in a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q).)

Substantial evidence supports the court's finding. In the confined space of a trolley and in the presence of other passengers, including children, appellant was punching windows with sufficient force to break them. It is common knowledge that punching a window can cause the glass to shatter, injuring bystanders. (See *Aldridge v. State* (2014) 325 Ga.App. 774, 775 [755 S.E.2d 19, 20] ["The punch caved in the window and shattered glass all over Sewell and his grandson, and Sewell sustained cuts to his head"]; *Fate v. Harper* (3d Cir. 2014) 558 Fed.Appx. 250, 251 ["Walker . . . punched and shattered Fate's windshield and driver's side window, sending glass into Fate's face"]; *Hall v. Donhue* (N.D.Ind. Apr. 13, 2007, No. 3:07-CV-146 RM) 2007 U.S.Dist.LEXIS 28323, at \*2) ["Hall alleges that . . . Correctional Officer Klauer used excessive force against him when he punched a window causing glass to shatter onto his face and into his eyes"].)

In *Labelle, supra*, 190 Cal.App.4th 149, we recognized the danger inherent in the shattering of a window: "[T]he officer . . . ordered appellant to stop kicking the window. When appellant continued kicking and shattered the window, the officer 'raised his arm to protect his eyes' from shards of glass. A small shard of glass flew from the shattered window and punctured the officer's thumb. It is reasonable to infer that, had the officer not 'raised his arm to protect his eyes,' the shard of glass could have caused substantial harm to his eyes." (*Id*. at p. 152.)

Appellant maintains, "[N]o evidence that any of the occupants of the trolley, most of whom had apparently left the

6

scene following the alleged battery, were at any risk from the broken glass from the trolley's windows." But it is reasonable to infer that the passengers were inside the trolley when appellant was punching the windows and were therefore at risk of injury from broken glass. The trolley's security officer said that, when the trolley arrived at the station where he was standing, "a lot of people started rushing off of the trolley saying there was a crazy guy in there punching windows."

*Conclusion*

"[V]iew[ing] the evidence in the light most favorable to the People and . . . presum[ing] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence," we conclude that a reasonable trier of fact could find beyond a reasonable doubt that appellant's commitment offense satisfied the MDO criteria. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

*Disposition*

The judgment (order committing appellant as an MDO) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

Michael Duffy, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of
Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Senior
Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising
Deputy Attorney General, Eric J. Kohm, Deputy Attorney
General, for Plaintiff and Respondent.