Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, | 2d Crim. No. B289648 |
| Plaintiff and Respondent, | (Super. Ct. No. 18PT-00224) |
| | (San Luis Obispo County) |
| v. | |
| DONALD FINCH WARREN, | |
| Defendant and Appellant. | |

Donald Finch Warren appeals the trial court's order declaring him a mentally disordered offender (MDO) and committing him to the Department of Mental Health for treatment. (Pen. Code, § 2962, et seq.)[1] Appellant contends the evidence is insufficient to support the finding that his commitment offense, felony indecent exposure (§ 314), involved an express or implied threat of force or violence likely to produce

---

[1] All statutory references are to the Penal Code unless otherwise stated.

substantial physical harm, as contemplated in section 2962, subdivision (e)(2)(Q). We agree and reverse.[2]

## FACTS AND PROCEDURAL HISTORY

In 2013, appellant was convicted of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and was sentenced to 32 months in state prison. He was scheduled to be released on parole in November 2017. While serving his sentence in San Diego County, he was charged in a January 2014 rules violation report (RVR) with violating prison rules by committing the offense of felony indecent exposure (§ 314, subd. (1)).[3] The matter was referred to the San Diego County District Attorney for possible investigation and prosecution (Cal. Code Regs., tit. 15, § 3316, subd. (a)). Pursuant to appellant's request, his RVR disciplinary hearing was postponed pending the outcome of the referral for criminal prosecution. (*Id.*, subd. (c).)

In November 2014, appellant was convicted in San Diego County Superior Court of felony indecent exposure and was sentenced to an additional and consecutive 32-month prison

---

[2] In light of our conclusion, we need not address appellant's alternative contention that the evidence is insufficient to support the finding that he represents a substantial danger of physical harm to others by reason of his severe mental disorder (§ 2962, subd. (d)(1)).

[3] An RVR is issued to document serious inmate misconduct that is a violation of law or is not minor in nature. (*In re Gray* (2007) 151 Cal.App.4th 379, 389.) An RVR triggers certain procedural protections and can result in various forms of discipline for the offending inmate. (See Cal. Code Regs., tit. 15, §§ 3313-3316.) The offense of felony indecent exposure constitutes a serious violation of the rule that inmates shall not engage in illegal sexual acts. (*Id.,* § 3007.)

term. In April 2015, following his RVR disciplinary hearing, he was found guilty of violating prison rules by committing the felony indecent exposure offense. He was scheduled to be released on parole in November 2017.

In September 2017, the Board of Prison Terms determined that appellant met the MDO criteria and sustained the requirement of treatment as a condition of his parole. Appellant petitioned for a hearing pursuant to section 2966, subdivision (b). Counsel was appointed to represent him and he waived his right to a jury trial.

Dr. Angie Shenouda, a forensic psychologist at Atascadero State Hospital, testified at the hearing. After interviewing appellant and reviewing his records, Dr. Shenouda opined that he suffers from a severe mental disorder, i.e., schizoaffective bipolar type. His symptoms include auditory hallucinations, self-harming behaviors, and hypersexuality. The doctor also concluded that appellant's mental disorder was a cause or aggravating factor in his commission of the commitment offense, that his disorder was in remission but could not be kept in remission without treatment, and that by reason of his disorder he represented a substantial danger of physical harm to others.

To prove that appellant's commitment offense of felony indecent exposure qualified him for MDO treatment, the People offered copies of his CLETS[4] report and the RVR regarding the

---

[4] CLETS is an acronym for California Law Enforcement Telecommunications System, a Department of Justice computer system that reports criminal history information. (*People v. Martinez* (2000) 22 Cal.4th 106, 113.)

3

offense.[5]  The CLETS report includes appellant's 2014 conviction of the current offense, and his prior convictions in 2003 on one misdemeanor count of indecent exposure (§ 314) and two counts of committing a lewd act on a child under the age of 14 (§ 288, subd. (a)).

In the RVR, female Correctional Officer M.M. reported: "On Friday January 31, 2014 at approximately 0713 hours while performing my duties as housing unit 15 control officer, I released all the inmates from the unit for breakfast.  I observed [appellant] remaining in the unit standing at the urinal behind the podium continuously staring at me.  I gave [appellant] an order to exit the unit and he complied.  As he entered the sally port he completely stopped directly beneath me looking up at my crotch through the control booth window.  He proceeded to breakfast.  [¶]  At approximately 0755 hours while releasing morning medication I opened cells 201 through 209.  [Appellant] exited cell 204 completely naked.  Utilizing his right hand holding his erect penis stroking it back and forth while directly looking at me.  I contacted Officer Strong to respond to the area. Officer Strong observed [appellant] masturbating and gave him a

---

[5] The evidence was offered pursuant to subdivision (f) of section 2962, which states in pertinent part:  "[T]he existence or nature of the crime, as defined in paragraph (2) of subdivision (e), for which the prisoner has been convicted may be shown with documentary evidence.  The details underlying the commission of the offense that led to the conviction, including the use of force or violence, causing serious bodily injury, or the threat to use force or violence likely to produce substantial physical harm, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals."

direct order to stop and step inside his assigned cell and I closed the cell door. I notified Sergeant Wall of the incident and yard staff cuffed and escorted [appellant] out of the unit. I fear for my safety with him on the yard, due to his stalking behavior. His progression from stalking to masturbating directly at me leads me to fear he may take it further. I was offered EAP [Employee Assistance Program] which I declined."

The RVR also refers to an incident report in which Correctional Officer Strong stated: "On Friday January 31, 2014 at approximately 0713 hours while performing my duties as Housing Unit Floor Officer and monitoring the morning chow release I observed [appellant] at the urinal in B section behind the podium. Using [t]he P/A . . . Correctional Officer [M.M.], [the] Housing Unit 15 control [b]ooth [o]fficer, prompted [appellant] to exit the building. [Appellant] complied. While exiting the Housing Unit I observed [appellant] stopped in the sally port looking straight up peering in the control booth, pausing for approximately 2-3 seconds then continuing on his way to chow. At approximately 0755 [h]ours while monitoring the morning medication release, Correctional Officer [M.M.] opened the last section for meds . . . . Correctional Officer [M.M.] notified me via the P/A [s]ystem stating 'check out 204[.'] I walked from the podium area behind the desk out to A-Section Dayroom by the T.V[.] area benches and I observed [appellant] standing on the tier in front of his cell staring in the direction of the control booth and using his right hand stroking his penis. I ordered [appellant] to stop and step back into his cell. [Appellant] complied."

At the MDO hearing, the trial court asked the prosecutor to explain his theory that appellant's offense of felony indecent exposure was a qualifying offense under the MDO law. The

5

prosecutor offered that "[t]he actions of the patient [*sic*] were obviously very threatening to [Officer M.M.]" as reflected in the RVR. The court responded, "Standing there naked and masturbating." The prosecutor replied, "It sounds kind of threatening to me, your Honor. She indicates her fear in that, your Honor, too."

In testifying at the hearing, appellant denied exposing himself to Officer M.M. and denied he had ever stared at the officer or tried to intimidate her. Appellant also asserted that when the alleged incident occurred, Officer M.M. "was 50 feet away from me inside a secure location where they have a switchboard for operating the mechanics of the doors to the cell[s]." He acknowledged that about two weeks prior to the incident, another officer had accused him of looking up at Officer M.M.'s crotch as she stood in the guard tower. He also surmised that although the other inmates were unaware of his prior criminal history, his prior offenses were "common knowledge" among the correctional staff.

The prosecutor argued that the proffered evidence "makes it very clear that this woman correctional officer was in a position to see this as stalking behavior and an acceleration of activity." The prosecutor added that "[appellant] did admit that the staff was aware of this past sexual situation. And it seems to me that makes the fear of this female correctional officer all the more reasonable. And when the court fits this in with the testimony of Dr. Shenouda and the totality of circumstances here, your Honor, there is no reasonable doubt. All [MDO] criteria are met."

Defense counsel replied that "[the prosecution] is relying on [section 2962, subdivision (e)(2)(Q)], which reads: 'A crime in which the perpetrator expressly or impliedly threatened another

6

with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used.' Now, we're talking about someone 50 feet away in a secluded, closed room of some sort. It strains the bounds of credulity to put logic behind that." Counsel went on to add that "even if you take two separate instances, one where he supposedly is staring at her up in this booth that she's in; or, comes out of his cell naked, how is that a threat to her? How is that a threat of force or violence? I don't see it. I think it's ridiculous."

The prosecutor countered that "sexual assault is a crime of force or violence," Officer M.M. "was aware of [appellant's] past," and that "[t]he circumstances of the offenses are ones that any reasonable person would be in subjective and objective fear." Defense counsel then reiterated, "[H]ow do you threaten somebody from 50 feet away on a different tier?"

The court responded: "Well, you are showing the woman your -- what organ you are going to use on her. I mean, most reasonable women are really bothered by guys that expose themselves in a masturbating way because it portrays to them that he wants to use his organ on them. Now, the guys might think, well, that's a pretty stupid way to attract a woman, if that was it. Or is he just pleasuring himself because there's a female in the vicinity? So, under the circumstances and in the way she wrote up the [RVR], she was obviously afraid by what she saw. Above and beyond the fact that he happened to be standing outside naked and masturbating based [on] his staring, his watching, his looking, et cetera. She refers to being on the yard, probably not the only place that a correctional officer is in [is] a booth. So I'm satisfied that [section 2962, subdivision (e)(2)(Q)]

7

was met here.  And that a reasonable woman would believe that force or violence would be used on her, not in that exact moment, but it's an implied threat."

The court went on to find that "[t]he other [MDO] criteria are met.  He can't be kept in remission.  He's a dangerous guy because he's hypersexual and he's bipolar . . . .  And if he can't control it in a secure setting, I'm worried about him out there in an unsecured setting.  And so I find that . . . all criteria were met.  His petition is denied."

## DISCUSSION

Appellant contends the evidence is insufficient to support the finding that his commitment offense of felony indecent exposure (§ 314) involved an express or implied threat to use force or violence (§ 2962, subd. (e)(2)(Q)).  We agree.

"The substantial evidence rule applies to appellate review of the sufficiency of the evidence in MDO proceedings.  [Citation.]  We review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence—'evidence that is reasonable, credible, and of solid value'—such that a reasonable trier of fact could find beyond a reasonable doubt that the commitment offense was a qualifying offense under the MDO statute.  [Citation.]" (*People v. Labelle* (2010) 190 Cal.App.4th 149, 151.)

To commit appellant for MDO treatment as a condition of his parole, the trial court had to find beyond a reasonable doubt that the offense for which he was sentenced to prison—felony indecent exposure—is a qualifying offense.  (§ 2962, subd. (e).)  As relevant here, a person is guilty of misdemeanor indecent exposure if he "willfully and lewdly . . . [¶]  1. Exposes his person, or the private parts thereof, in any public place, or in any place

8

where there are present other persons to be offended or annoyed thereby . . . ." (§ 314.) The crime becomes a felony where, as here, the defendant has a prior conviction for indecent exposure under subdivision (1) of section 314, or a prior conviction for committing a lewd act on a child under the age of 14 in violation of section 288. (*Ibid.*)

The trial court found that appellant's felony indecent exposure offense qualified him for MDO treatment because it was "[a] crime in which the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q).) In making this finding, the court primarily relied on Officer M.M.'s statements that "I fear for my safety with [appellant] on the yard, due to his stalking behavior" and that "[h]is progression from stalking to masturbating directly at me leads me to fear he may take it further."

Appellant's conviction of felony indecent exposure, however, does not encompass the alleged "stalking behavior" he exhibited prior to his commission of the offense. As we have previously recognized, "other crimes the prisoner may have committed in perpetrating the commitment offense are irrelevant to the determination whether that offense meets the criteria for MDO treatment." (*People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 926-927, citing *People v. Green* (2006) 142 Cal.App.4th 907, 913.)

In any event, the evidence is insufficient to prove that appellant's felony indecent exposure offense involved a threat to use force or violence likely to produce substantial physical harm. Appellant walked out of his cell naked and masturbated while

looking at a female correctional officer who stood a substantial distance away from him in a secure location. Earlier that morning, he was twice seen briefly staring at the same officer. On each occasion, he was ordered to cease his offensive behavior and he immediately complied. Moreover, there is no evidence that appellant ever attempted to make physical contact with Officer M.M. or that he exhibited aggressive, forceful, or violent behavior toward her or anyone else.

In arguing below that appellant's offense involved a threat to use force or violence, the prosecution speculated that Officer M.M. was aware of appellant's prior convictions under section 288 and offered that "sexual assault is a crime of force or violence." But nothing in the record indicates that appellant's prior sex offenses involved the use of force or violence or a threat to use force or violence. Both of his prior convictions were under subdivision (a) of section 288. Although a conviction under subdivision (b) of the statute necessarily includes a finding that the defendant used or threatened to use force or violence, no such finding is required for a conviction under subdivision (a).

Moreover, there is nothing else in the record to suggest— much less prove beyond a reasonable doubt—that appellant threatened Officer M.M. with the use of force or violence likely to produce substantial physical harm. In finding otherwise, the trial court emphasized Officer M.M.'s statement that as a result of appellant's conduct, she feared for her future safety "on the yard." But the officer's stated fear of appellant, even if objectively reasonable, does not help establish that he actually threatened to use force or violence against her at some unspecified time in the future.

The trial court nevertheless reasoned that appellant intended to convey such a threat to Officer M.M. because men who expose themselves in the manner he did "are showing the woman . . . what organ you are going to use on her."  The court also acknowledged, however, that men who commit such acts may "just [be] pleasuring [themselves] because there's a female in the vicinity."  As our Supreme Court has recognized, the crime of indecent exposure "invariably entails no physical aggression or even contact . . . ."  (*In re Lynch* (1972) 8 Cal.3d 410, 430.)  Moreover, "'[i]t is generally agreed that the exhibitionist does not seek further contact with the victim; on the contrary, he is afraid of it.  There is usually some appreciable distance which separates the exhibitionist and the object and rarely does it occur when the parties are in close proximity.' [Citation.]"  (*Ibid.*)  This is such a case.

## DISPOSITION

The MDO commitment order is reversed.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

I concur:

TANGEMAN, J.

YEGAN, Acting P. J., Dissenting:

I respectfully dissent. The seasoned Superior Court judge expressly found an implied threat that appellant would sexually accost the female correctional guard in the future. Sitting as trier of fact, it could rationally draw this inference from the guard's testimony. This is not impermissible speculation as a matter of law. (*People v. Bohana* (2000) 84 Cal.App.4th 360, 368-369.) The felony offense of indecent exposure can, in theory, be committed in a way that such inference cannot be drawn. But that is not what happened here. The guard was placed in fear for her safety because of appellant's actions. He was staring at her, staring at her crotch, stalking her, and while naked was masturbating in front of her. He did so willfully and lewdly. We have held that stalking is a crime involving a threat of force. (*People v. Itehua* (2014) 227 Cal.App.4th 356.) Appellant's actions went well beyond a simple exposure of the penis. And, his actions formed the basis for the forensic psychologist to opine that he was a mentally disordered offender. This case would be more robust if appellant had verbally announced his intention to sexually accost the guard. But the Superior Court found that he announced his intention by his actions.

The majority opinion recites the substantial evidence rule but in my view, it is not applied. It draws inferences away from the judgment. The guard's testimony and her expressed fear, as well as the expert opinion are given little, if any, weight on appeal. We should not view the elements of the offense in a vacuum. The entire evidentiary picture before and during appellant's encounters with the guard give the context in which the offense has been committed. To not consider the factual context gives a distorted view of what happened and why the

1

Board of Prison Terms initiated the MDO proceeding.  To the extent that *People v. Kortesmaki* (2007) 156 Cal.App.4th 922 and *People v. Green* (2006) 142 Cal.App.4th 907 indicate to the contrary, they should not be followed.  I concurred in these opinions but upon reflection, they go too far.

To be sure, our resolution of the case depends on an intellectual inquiry and a fair application of legal principles.  But we should apply a practical wisdom and ask ourselves what is really going on here.  We should not be a slave to the literal wording of the commitment offense and its least adjudicated elements.  To do so here defeats justice.  The MDO law is civil in nature and even though there are consequences, it seems obvious that the majority's technical reading of the law will lead to the release of a person who is just not ready for release into the community.  If he cannot control his sexual urges in a confined setting, how can he do so in the community?  It does not appear to me that the majority opinion furthers the express legislative goal of protecting the public.

I make a final observation.  Whatever can be said about *In re Lynch* (1972) 8 Cal.3d 410, 430, it is not binding upon us as a rule of law.  I am not called upon to agree or disagree with 50-year-old dicta concerning lack of aggression of an exhibitionist.  It is sufficient to observe 1) appellant's actions are far more egregious than simple exhibition and 2) there is one female guard who does not agree.  I therefore must respectfully dissent.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


2

Donald G. Umhofer, Judge*

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of
Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief
Assistant Attorney General, Lance E. Winters, Assistant
Attorney General, Margaret E. Maxwell and Thomas C. Hsieh,
Deputy Attorneys General, for Plaintiff and Respondent.

_____

* Retired Judge of the San Luis Obispo Superior Court
assigned by the Chief Justice pursuant to article VI, § 6 of the
California Constitution.